**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ROBERT YOUNGS PELGRIFT, JR., | : | CIVIL CASE NO. |
| SUSAN CURTIS PELGRIFT, | : | 3:24-CV-00474 (JCH) |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CITIMORTGAGE, INC., | : | MAY 29, 2025 |
| STEPHEN KEYES, | : | |
| KRISTEN KEYES, | : | |
| WILLIAM PAGE, | : | |
| LISA PAGE, | : | |
| TOWN OF GREENWICH, | : | |
| PATRICIA SESTO, | : | |
| BETH EVANS, | : | |
| JUAN PAREDES, | : | |
| JODI COUTURE, | : | |
|     Defendant. | : | |

**RULING ON MOTION TO DISMISS AMENDED COMPLAINT (DOC. NO. 77)**

**I.    INTRODUCTION**

    The plaintiffs, Robert Youngs Pelgrift, Jr. and Susan Curtis Pelgrift (collectively,

"the Pelgrifts"), bring this suit against CitiMortgage, Inc. ("CMI"), Stephen and Kristen

Keyes ("the Keyes"), William and Lisa Page ("the Pages"), the Town of Greenwich,

Connecticut, ("the Town") and current and former employees of the Town, Patricia

Sesto, Beth Evans, Juan Paredes, and Jodi Couture (collectively, "the Town

defendants").  See Amended Complaint ("Am. Compl.") (Doc. No. 66).[1]  The Pelgrifts

bring claims sounding in federal and state law arising from the alleged unlawful

discharge of water, sediment, and contaminants onto the Pelgrifts' property and into

protected wetlands and watercourses.  See id.

---

[1] While the Pelgrifts now proceed pro se, the Amended Complaint was prepared by the Pelgrifts'
prior counsel.  See Am. Compl.

Before the court is a Motion to Dismiss the Amended Complaint filed by the Town defendants.  Town Defendants' Motion to Dismiss Amended Complaint (Doc. No. 77); see also Town Defendants' Memorandum of Law in Support of Motion to Dismiss Amended Complaint ("Def.s' Mem.") (Doc. No.  77-1); Town Defendants' Reply to Plaintiffs' Opposition to Motion to Dismiss Amended Complaint ("Defs' Reply) (Doc. No. 99).  The plaintiffs oppose the Motion.  Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss Amended Complaint ("Pl.s' Opp'n") (Doc. No. 94).

For the reasons that follow, the Town defendants' Motion is granted in part and denied in part.

## II.    BACKGROUND

### A.    Alleged Facts

The Pelgrifts reside at 76 Birch Lane in Greenwich, Connecticut.  Am. Compl. at ¶ 3.  Bordering the Pelgrifts' property to the north is 80 Birch Lane, which is owned by the Keyes.  Id. at ¶¶ 12, 29.  Abutting 80 Birch Lane to the east is 82 Birch Lane, which is owned by the Pages.  Id. at ¶¶ 13, 29.  To the north of the Birch Lane properties, and neighboring 80 and 82 Birch Lane, is 471 North Street, which contains streams that flow into Brothers Brook.  Id. at ¶¶ 29, 30.  Brothers Brook is northwest of 76 Birch Lane and west of 80 and 82 Birch Lane.  Id. at ¶¶ 31–32. The Brook flows into Birch Lane Pond, which itself is west of 76 Birch Lane and southwest of 80 and 82 Birch Lane.[2]  Id.  The Pond is a tributary of the Long Island Sound.  See id. at ¶ 32.  Both 76 and 80 Birch Lane contain estuarine wetlands.  See id. at Figure 1, 9 n. 3.   On 76 Birch Lane, the

---

[2] On the basis of the Pelgrifts' allegation that 80 Birch Lane is north of 76 Birch Lane, Am. Compl. at ¶ 12, and upon reviewing Figure 1 of the Amended Complaint, the court will describe the location of other points of interest using cardinal and ordinal directions on the assumption that 80 Birch Lane is due north of 76 Birch Lane.

wetlands are on the western portion of the property and on 80 Birch Lane they are on the southwestern portion of the property.  See id.

Before the Keyes owned 80 Birch Lane, it was owned by CMI, which obtained ownership of the property through foreclosure.  See id. at ¶ 33.  CMI is alleged to have installed pipes on 80 Birch Lane diverting water flowing from streams on 471 North Street to the southwestern portion of 80 Birch Lane.  Id. at ¶ 36.  Allegedly because of these pipes, water flows onto the Pelgrifts' property creating what they call a "swamp." Id. at ¶ 32.  Had CMI not diverted these streams, the Pelgrifts allege, the water would have naturally flowed onto 80 Birch Lane.  Id. at ¶¶ 34, 46.  CMI also allegedly added fill to 80 Birch Lane that altered the topography of 80 Birch Lane, thereby directing further water to the Pelgrifts' property.  Id. at ¶¶ 37.c, 53.

The Keyes acquired 80 Birch Lane in March 2021.  Id. at ¶ 12.  On July 2, 2021, the Keyes submitted an application for an Inland Wetlands and Watercourses Permit. Id. at ¶ 75.  The application included a site plan, survey, and drainage report.  Id.  The survey, which was prepared in March 2021, allegedly did not comply with the Greenwich Inland Wetlands and Watercourses Regulations because it did not identify watercourses on 80 Birch Lane, such as streams flowing into the southwest corner of the property, the location of visible bodies of water, the pipes installed by CMI, and the location of other existing drainage structures.  Id. at ¶¶ 128–33.  The survey also allegedly failed to include a detailed erosion and sediment control plan, as allegedly required under certain Town regulations.  Id. at ¶¶ 133–36.  The application also allegedly omitted an environmental report, even though such a report was allegedly required.  Id. at ¶ 178.  Patricia Sesto ("Ms. Sesto"), who oversaw the Greenwich Inland

3

Wetlands and Watercourses Agency staff, allegedly knew, or should have known, that the survey was deficient.  Id. at ¶¶ 15, 127.  Despite the alleged deficiencies of the application, the Greenwich Inland Wetlands and Watercourses Agency issued the Keyes a permit in August 2021.  Id. at ¶ 178.

Though the Keyes originally sought a permit to build an addition, they demolished their entire home in December 2021.  See id. at ¶¶ 77, 79.  Because the Keyes lacked a permit to demolish their home, the Town issued a stop work order.  Id. On December 27, 2021, the Keyes submitted a new application for an Inland Wetlands and Watercourses Permit.  Id. at ¶ 80.  The application included a site plan and, sometime in early 2022, the Keyes added a survey, the same allegedly deficient survey described above, and an environmental report.  Id.  The Pelgrifts allege the report did not comply with certain Inland Wetlands and Watercourses Regulations because it failed to take into account that the Keyes had removed over one dozen trees, failed to distinguish watercourses from wetlands, and failed to identify certain watercourses.  Id. at ¶ 174.a–d.  Despite these alleged deficiencies, the Keyes obtained a second Inland Wetlands and Watercourses Permit on February 24, 2022.  See id. at ¶ 178.  The Pelgrifts maintain Ms. Sesto failed to ensure the application included all of the necessary disclosures before the Keyes' application was approved.  Id. at ¶ 179.

The Keyes filed a zoning permit application in March 2022, after previously filing one in September 2021.  Id. at ¶¶ 77, 87.  The Pelgrifts allege that, Jodi Couture ("Mr. Couture"), the Town's Zoning Enforcement Officer, improperly approved zoning application materials even though the materials were inadequate under zoning and Inland Wetlands and Waterways regulations.  See id. ¶ 187a–e.  However, the Pelgrifts

do not indicate whether Mr. Couture's alleged errors relate to only one of the applications, or both of them.  See id.

Between March and June 2022, Juan Paredes ("Mr. Paredes"), a civil engineer employed by the Town, worked with the Keyes on their Stormwater Management Plan. Id. at ¶ 88.  The plan provided for the use of underground pipes to channel water to the southwest portion of the Keyes' property where the water would then flow into a level spreader located a few feet from the Pelgrifts' property.  Id. at ¶¶ 90–91.  According to the Pelgrifts, the plan failed to consider that the home the Keyes intended to build would be larger than the home they had demolished, which would cause more water to flow on to the Pelgrifts' property.  Id. at ¶¶ 157–58.  The Pelgrifts assert the Stormwater Management Plan did not comply with the Inland Wetlands and Watercourses Permit and was approved outside of the regulations governing such approval.  Id. at ¶¶ 93, 96, 159.

The Pages acquired 82 Birch Lane in July 2022.  Id. at ¶ 13.  In March 2023, the Pages submitted a site plan in connection with certain improvements they wished to make to their property.  See id. at ¶ 106.  On the basis of the site plans submitted by the Keyes and Pages, Mr. Paredes allegedly worked with the Keyes and Pages to develop an updated Stormwater Management Plan.  Id. at ¶¶ 107, 113.  The revised Stormwater Management Plan provided for pipes to be installed under 80 Birch Lane that were intended to carry water from 82 Birch Lane to the southwest corner of 80 Birch Lane, thereby allegedly causing more water to flow onto the Pelgrifts' property.  Id. at ¶¶ 110–11, 115–18.  These new pipes were in addition to a preexisting drainage system installed on 82 Birch Lane before the Pages acquired the property.  See id. at ¶ 66.

This system uses a catch basin and sump pump to channel water through underground pipes from 82 Birch Lane to the southwest corner of 80 Birch Lane.  See id. at ¶¶ 66–68.  In connection with this revised Stormwater Management Plan, Mr. Paredes prepared a Stormwater Easement Agreement, whereby the Keyes agreed to allow underground pipes on their property to move water from 82 Birch Lane to the southwest corner of 80 Birch Lane.  Id. at ¶¶ 73, 117–18.  The Pelgrifts allege Mr. Paredes and Beth Evans ("Ms. Evans"), the Town's Director of Environmental Affairs, knew or should have known, that the revised Stormwater Management Plan and Stormwater Easement Agreement did not comply with the Inland Wetlands and Watercourses Permit initially issued to the Keyes in 2021, and violated certain laws and regulations governing wetlands and watercourses.  Id. at ¶¶ 16, 115, 159, 180–82.

The Pelgrifts allege further that stormwater runs off of Birch Lane into a stormwater system that moves water, containing oil and scum, into wetlands and surface water on 76 Birch Lane, which is in violation of a Municipal Separate Storm Sewer System ("MS4") permit issued to the Town.  See id. at ¶¶ 39–41.

B.  Procedural Posture

The Pelgrifts filed the instant lawsuit on March 27, 2024.  See Complaint (Doc. No. 1).  The Pelgrifts filed their Amended Complaint on October 18, 2024.  See Am. Compl.  They invoke federal question jurisdiction pursuant to section 1331 of title 28 of the U.S. Code.  Id. at ¶ 6.  The Pelgrifts assert: Count One, violations of the Clean Water Act, section 1365(a)(1) of title 33 of the U.S. Code; Counts Two and Three, Due Process violations made actionable through section 1983 of title 42 of the U.S. Code; Count Four, negligent diversion of surface waters; Count Five, private nuisance and

trespass;[3] Count Six, violation of the Inland Wetlands and Watercourses Act, section 22a-44(b) of the General Statutes of Connecticut; Count Eight, breach of covenant;[4] Count Nine, negligence per se; Count Ten, negligence; Count Eleven, violations of the Connecticut Environmental Protection Act ("CEPA"), section 22a-16 of the General Statutes of Connecticut; and Count Twelve, indemnification pursuant to section 7-465 of the General Statutes of Connecticut.  See Am. Compl.

On November 27, 2024, the Town defendants filed the instant Motion to Dismiss Counts One, Two, Six, Nine, Eleven, and Twelve of the Amended Complaint.  See Def.s' Mot.  On January 17, 2025, the Pelgrifts timely filed their Opposition to the Town defendants' Motion.  See Pl.s' Opp'n.  On February 17, 2025, the Town Defendants timely filed their Reply.  See Def.s' Reply.

On February 24, 2025, the Pelgrifts moved for leave to file a Second Amended Complaint.  Plaintiffs' Motion for Leave to File Amended Complaint (Doc. No. 100).  The court denied the Pelgrifts' Motion and explained the court would determine whether the Pelgrifts could file a Second Amended Complaint when ruling on the Town Defendants' Motion to Dismiss Amended Complaint.  Ruling on Motion to File Second Amended Complaint ("Ruling") (Doc. No. 114) at 9.

---

[3] The Pelgrifts label two causes of action as their "Fifth Cause of Action."  Because neither cause of action is at issue here, the court refers to both of them as Count Five.  See Am. Compl. at 43–44.

[4] The Pelgrifts do not assert a seventh cause of action in their Amended Complaint.  See Am. Compl. at 44–45.

## III.    STANDARD OF REVIEW

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a Complaint as true, and draws all reasonable inferences in the nonmovant's favor.  See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action."  Iqbal, 556 U.S. at 678.

## IV.    DISCUSSION[5]

According to the Town defendants, the court should dismiss all of the counts brought by the Pelgrifts against them.  See Def.s' Mot.  The Town defendants argue Count One, brought under the Clean Water Act against the Town and other defendants not a party to the instant Motion, is not cognizable under the Act and should be dismissed as brought against the Town.  Def.s' Mem. at 20, 22–25; Def.s' Reply at 2–3.

---

[5] The Amended Complaint at issue was drafted by an attorney, while the Pelgrifts' Opposition was prepared by the Pelgrifts themselves, who have appeared pro se.  Compare Am. Compl. (signed by the Pelgrifts' counsel); with Pl.s' Opp'n (signed by the Pelgrifts).  Ordinarily, the court is to liberally construe a complaint prepared by pro se litigants.  Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006).  Here, however, the court will not apply this especially liberal standard when reviewing the Pelgrifts' Amended Complaint because it was prepared by counsel.  Because only the Pelgrifts' Opposition was prepared without the assistance of counsel, the court will apply an especially liberal construction to only that filing.  See Friedman v. Self Help Cmty. Servs., No. 11-CV-3210 NGG JMA, 2015 WL 1246538, at *16 (E.D.N.Y. Mar. 17, 2015), aff'd sub nom. Friedman v. Self Help Cmty. Servs., Inc., 647 F. App'x 44 (2d Cir. 2016) (electing to liberally construe only the plaintiff's opposition because that was prepared pro se while the complaint was prepared by counsel).

Count Two, brought under section 1983 of title 42 of the U.S. Code against the individual Town defendants, should also be dismissed, it is argued, because the individual Town defendants are protected from suit under qualified immunity.  Def.s' Mem. at 25–32; Def.s' Reply at 3–4.  Count Three is brought under section 1983 against the Town and should be dismissed, per the Town defendants, because the Amended Complaint fails to suggest the Pelgrifts' suffered a violation of their constitutional rights.  Def.s' Mem. at 32–34; Def,s' Reply at 4–5.  Count Six, brought under the Inland Wetlands and Watercourses Act against the Town, among other defendants not parties to the instant Motion, should be dismissed as against the Town because it is immune pursuant to discretionary act immunity.  Def.s' Mem. at 34–38; Def.s' Reply at 5–6.  Counts Nine and Eleven, should be dismissed, as brought against the Town defendants, because neither count is cognizable under CEPA.  Def.s' Mem. at 38–42; Def,s' Reply at 6–7.  Finally, it is argued that Count Twelve, which is brought against the Town and seeks indemnification on the basis of the individual Town defendants' liability, is derivative of other claims and must also be dismissed if the underlying claims are also dismissed.  Def.s' Mem. at 42–43.

The Pelgrifts oppose these arguments, except as to Count Twelve, which they do not address.  See Pl.'s Opp'n.[6]  The court will address each argument in turn.

---

[6] The Pelgrifts argue that the court should deny the Town defendants' Motion because it was filed in contravention of the court's Scheduling Order, which permits each party to file only one dispositive motion without leave, and without the court's leave to file a second motion.  Pl.s' Opp'n at 23–24.  The court terminated the Town defendants' first Motion to Dismiss as moot after the Pelgrifts filed their First Amended Complaint.  Order Terminating Motion to Dismiss (Dkt. No. 79).  Accordingly, the court considers the instant Motion the first such motion of its type, and the Town defendants did not have to seek leave to file the instant Motion.

A.    Count One: Violations of the Clean Water Act

The Clean Water Act ("CWA") was enacted by Congress "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  "[T]o achieve these goals, [section] 301(a) of the Act makes unlawful the discharge of any pollutant into navigable waters except as authorized by specified sections of the Act."  Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 52 (1987).  The Act does not ban all discharge of pollutants; instead, it contemplates a permitting regime by which discharges may be done lawfully.  Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York, 273 F.3d 481, 486 (2d Cir. 2001).  As relevant here, discharges are lawful when they are made pursuant to sections 402 and 404 of the Act.  See 33 U.S.C. §§ 1342, 1344.  Section 505 of the Act permits citizen suits "against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution)," so long as the subject of the lawsuit is "alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation[.]" 33 U.S.C. § 1365(a)(1).

The Town defendants argue first that the Amended Complaint does not contain allegations the Town illegally discharged pollutants in violation of the CWA.  Def.s' Mem. at 22–23.  Second, the Town defendants assert that their municipal permitting activities cannot provide a basis for a suit brought under the CWA.  Id. at 23–25.  The Pelgrifts respond that the Amended Complaint contains allegations the Town violated the Act, and that the Pelgrifts may invoke section 505 of the Act because the Town

issued a permit in violation of the standards set therein. Pl.s' Opp'n at 4–7. The court will address both of the Town defendants' arguments in turn.

       1.    State MS4 Permit

The Town defendants argue that nowhere in the Pelgrifts' Amended Complaint do the Pelgrifts assert the Town is itself discharging water in violation of the Clean Water Act. Def.s' Mem. at 23; Def.s' Reply at 3. The Pelgrifts assert that the Amended Complaint does include such allegations. Pl.s' Opp'n at 9. Specifically, the Pelgrifts allege the Town is discharging stormwater, which contains oil and scum, that flows onto the Pelgrifts' property and, from there, travels to a nearby stream. Am. Compl. at ¶¶ 39–41. The Pelgrifts allege further that this discharge is in violation of an MS4 permit issued through a regulatory regime operated by the Connecticut Department of Energy and Environmental Protection ("DEEP"). Id. at ¶¶ 39, 161.

The CWA provides that the Administrator may allow the states to issue permits governing discharges. See id. at § 1342. Connecticut instituted its own permit program in accordance with the CWA by enacting section 22a-430 of the General Statutes of Connecticut. Connecticut Fund for Env't v. Acme Electro-Plating, Inc., 822 F. Supp. 57, 60 (D. Conn. 1993). Under section 22a-430b, the Connecticut legislature allows the Commissioner of DEEP to issue a general permit for the discharge of stormwater. Conn. Gen. Stat. § 22a-430b. Permits of this sort may be issued or renewed only if "such issuance or renewal is consistent with the provisions of the federal Clean Water Act[.]" Id. at § 22a-430(a). Further, a permit may be issued pursuant to section 22a-430 of the General Statutes of Connecticut if (1) the Commissioner determines the discharge of stormwater would not pollute waters of the state, or (2) the Commissioner determines that while the discharge of stormwater would pollute waters of the state, the

municipality's proposal to treat the stormwater is sufficient to protect the waters from such pollution. Conn. Gen. Stat. § 22a-430(b). Accordingly, a lawfully issued general permit for the discharge of stormwater must require the permit holder to comply with the provisions of the CWA and under Connecticut law the holder of a stormwater discharge permit is prohibited from discharging untreated polluted stormwater into the waters of the state.

While the Amended Complaint is not a picture of clarity, the allegations just described, which are incorporated by reference into Count One of the Amended Complaint, id. at ¶ 189, are sufficient to plausibly raise an inference that the Town acted in violation of the CWA. The allegations plausibly suggest the Town has a general permit to discharge stormwater and, in contravention of this permit, the Town is discharging untreated and polluted stormwater containing "visible oil and scum" onto the Pelgrifts' property. See id. at ¶¶ 39–41, 194. This stormwater water, according to the Pelgrifts' Amended Complaint, ultimately travels into the waters of Connecticut. See id. at ¶ 32. The Citizen Suit Provision of the Clean Water Act expressly contemplates suits brought against entities that violate an "effluent standard or limitation," which may be established through "a permit or condition of a permit" issued in connection with stormwater discharge. See 33 U.S.C. §§ 1365(a), (f), 1342(p). As a result, the court concludes Count One of the Amended Complaint includes allegations that state a plausible claim for relief under the CWA.

2.    Town Permits

The Town defendants argue that the Pelgrifts cannot utilize the Citizen Suit provision of the CWA to bring a claim against the Town based on its issuance of a permit that fails to comply with provisions of the Act. Def.s' Mem. at 23–25; Def.s' Reply

at 2–3.  In raising this argument, the Town defendants cite <u>Love v. New York State</u> <u>Dep't of Env't Conservation</u>, 529 F. Supp. 832 (S.D.N.Y. 1981), where a District Court concluded the Citizen Suit provision of the Act could not be used to bring a claim against the State of New York for issuing a permit pursuant to a state law promulgated in response to the CWA.  <u>Id.</u> at 23–24 (citing 529 F. Supp at 841–32).  The Pelgrifts contend that the Town effectively exempted the Keyes from having to comply with provisions of the CWA, which the Town lacks the power to do pursuant to the Supremacy Clause of the U.S. Constitution.  Pl.s' Opp'n at 6–7.   The Pelgrifts also argue that <u>Love</u> is distinguishable from the instant case because "the Town of Greenwich Inland Wetlands permit issued to the Keyes Defendants . . . is <u>not</u> a State permit and <u>not</u> issued under the Clean Water Act."  <u>Id.</u> at 7.

In considering whether the Town's issuance of permits can serve as a basis for the Pelgrifts' CWA claim, the key question is whether the Citizen Suit provision of the CWA provides a cause of action for a claim that the Town's issuance of permits violated the CWA.  The court's reading of the Citizen Suit provision suggests claims are limited, as relevant here, to those alleging a defendant violated the CWA by failing to comply with an "effluent standard or limitation" promulgated pursuant to the CWA or an "order issued by the Administrator of a State" regarding such a standard or limitation.  33 U.S.C. § 1365(a)(1).  The Citizen Suit provision is silent about claims challenging the propriety of a municipality's issuance of a permit.  <u>See</u> <u>id.</u>  Accordingly, the court concludes that the Pelgrifts' second basis for their First Cause of Action, that the Town improperly issued certain permits, is not cognizable under the CWA.

The court is unpersuaded by the Pelgrifts arguments to the contrary.  The Pelgrifts first cite a Ruling from the Ninth Circuit rejecting an argument made by a company defendant claiming that the State of Montana had exempted the company defendant from having to comply with provisions of the CWA.  Id. (citing N. Plains Res. Council v. Fid. Expl. & Dev. Co., 325 F.3d 1155, 1164 (9th Cir. 2003)).  The court is unconvinced by this argument because it fails to address the key issue: whether the Citizen Suit provision in the CWA provides a cause of action through which private individuals may sue municipalities that fail to properly administer the CWA.

The Pelgrifts next argue that Love is distinguishable from the instant case because "the Town of Greenwich Inland Wetlands permit issued to the Keyes Defendants . . . is not a State permit and not issued under the Clean Water Act."  Def.s' Opp'n at 7.  While Love may accord with the court's own reading of the Citizen Suit provision of the CWA, this court is not bound by Love, nor does it rely on it in interpreting the operative provision of the CWA.  However, the court notes further that if, as the Pelgrifts' argue, the permits that are the subject of Count One are not issued under the CWA, Pl.s' Opp'n at 7, the Citizen Suit provision of the Act cannot serve as a basis for challenging the Town's issuance of the permits.  United States v. Hooker Chemicals & Plastics Corp., 749 F.2d 968, 979 (2d Cir. 1984) (explaining the Citizen Suit provision is limited to instances in which a plaintiff seeks to enforce standards established pursuant to the Clean Water Act).

In sum, the court grants in part and denies in part the Town's Motion as to Count One.  The Motion is granted to the extent Town's issuing of permits serves as a basis

for the First Cause of Action.  The Motion is denied to the extent the Town's discharge

of stormwater pursuant to its MS4 permit serves as a basis for the First Cause of Action.

      B.    <u>Count Two: Individual Town defendants' violations of section 1983</u>

      The Town defendants argue that the named Town employees may invoke

qualified immunity as a basis for protection from the Pelgrifts' section 1983 cause of

action.  The Town defendants base this argument on their assertion that the individual

Town defendants did not violate a right conferred upon the Pelgrifts by the Due Process

Clause of the Fourteenth Amendment of the U.S. Constitution.  Def.s' Mem. at 25–26;

Def.s' Reply at 3.  The Pelgrifts respond that they do have such a constitutional right,

specifically, "'Plaintiffs at all relevant times had a legitimate property interest in, and

claim of entitlement to the benefit of, the lawful and proper enforcement of the Town of

Greenwich Inland Wetlands and zoning regulations[.]'"  Pl.s' Opp'n at 12 (quoting Am.

Compl. at ¶ 197).  The Pelgrifts argue the Town defendants violated the Pelgrifts

substantive Due Process right in this interest.  <u>Id.</u> at 11.

      "Qualified immunity shields [government officials] from § 1983 claims for money

damages provided that their conduct does not violate clearly established constitutional

rights of which a reasonable person would have been aware."  <u>Zalaski v. City of</u>

<u>Hartford</u>, 723 F.3d 382, 388 (2d Cir. 2013).  In deciding whether qualified immunity may

be successfully invoked, the court "is guided by two questions: first, whether 'the facts

show that the [defendants'] conduct violated plaintiff[s'] constitutional rights,' and

second, whether the right was 'clearly established at the time of the defendant[s']

actions.'"  <u>Golodner v. Berliner</u>, 770 F.3d 196, 201 (2d Cir. 2014) (quoting <u>Zalaski</u>, 723

F.3d at 388).  If the court answers "either question in the negative, qualified immunity

attaches.  [The court] may address these questions in either order."  Id. (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)).

It is doubtful the Pelgrifts have a property interest in the enforcement of wetlands and zoning regulations.  See Gagliardi v. Vill. of Pawling, 18 F.3d 188, 192 (2d Cir. 1994) (when an agency "has discretion with regard to the benefit at issue, there . . . is no entitlement to that benefit."); RRI Realty Corp. v. Inc. Vill. of Southampton, 870 F.2d 911, 918 (2d Cir. 1989) ("The fact that the permit could have been denied on non-arbitrary grounds defeats the federal due process claim."); Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 59 (2d Cir. 1985) (acknowledging the "egregious misconduct" of members of the West Haven, Connecticut zoning board but concluding the plaintiff had no property right under the Due Process Clause, and thus no cognizable claim).  Had the Pelgrifts premised their section 1983 claim solely on their property interest in the administration of wetlands and zoning regulations, the individual Town defendants may well have been entitled to qualified immunity.

However, the court notes that, in Count Two of the Amended Complaint, the Pelgrifts assert the violation of a second constitutionally protected property interest, the use of one's property free from flooding, sediment, and pollutants.  Am. Compl. at ¶ 201.  The Town defendants do not discuss this second alleged constitutionally protected interest.  See Def.s' Mem. 25–26 (characterizing the Pelgrifts' Amended Complaint as asserting a claim arising from a property interest in the enforcement of wetlands and zoning regulations).  As a result, it would be premature for the court to grant the individual Town defendants qualified immunity before the court has received briefing

about the viability of a section 1983 claim premised on the infringement of the Pelgrifts'
use of their property.

Accordingly, the court denies the Town defendants Motion to dismiss Count Two
of the Amended Complaint.  The Pelgrifts' Second Cause of Action survives the instant
Motion to the extent it is based on the Town defendants' alleged infringement of the use
of Pelgrifts' alleged right to use their property free from flooding.

C.    Count Three: Town's violation of section 1983

The Town defendants argue Count Three of the Pelgrifts' Amended Complaint
should be dismissed because it fails to state a claim pursuant to Monell v. Dep't of Soc.
Servs. of City of New York, 436 U.S. 658 (1978).  Def.s' Mem. at 32–33.  Specifically,
the Town defendants contend that, in the event the court concludes the Pelgrifts have
failed to state a section 1983 claim against the individual Town defendants under Count
Two of the Amended Complaint, the Pelgrifts' related Monell claim must also fail.  Def.s'
Mem. at 33; Def.s' Reply at 4–5.  The Pelgrifts respond that they allege actions of the
Town employees that amount to an official town policy and that, if given the opportunity
to amend their complaint, they will include additional details about these practices.  Pl.s'
Opp'n at 17.

To raise a cognizable claim against a municipality under section 1983, "a plaintiff
is required to plead . . . three elements: (1) an official policy or custom that (2) causes
the plaintiff to be subjected to (3) a denial of a constitutional right."  Wray v. City of New
York, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks omitted).

As with Count Two, in Count Three of their Amended Complaint the Pelgrifts
assert a second constitutionally protected property interest: the use of their property free
from flooding and contamination.  Am. Compl. at ¶ 207.  And as with Count Two, the

Town defendants fail to address why the court should dismiss Count Three to the extent it arises from the Town's alleged infringement on the Pelgrifts interest in the use of their own property.  See Def.s' Mem. at 32–34.  Because the Town defendants do not address this second basis for the Pelgrifts' Monell claim, the court denies the Motion to dismiss Count Three of the Amended Complaint.  As with Count Two of the Amended Complaint, Count Three survives to the extent it is based on the Town's alleged infringement upon the Pelgrfits' property interest in the use of their property free from flooding.

       D.      Count Six: Violations of the Connecticut Inland Wetlands and Watercourses Act

In Count Six of the Pelgrifts' Amended Complaint, they assert a claim under the Connecticut Inland Wetlands and Watercourses Act, section 22a–44(b) of the General Statutes of Connecticut.  Am. Compl., Count Six.  Section 22a-44(b) confers a private right of action upon citizens seeking to enforce provisions of the Inland Wetlands and Watercourses Act.  Windels v. Env't Prot. Comm'n of Town of Darien, 284 Conn. 268, 300 (2007).  The statute provides, in part, that any person may bring an action against "[a]ny person who commits, takes part in, or assists in any violation of any provision of sections 22a-36 to 22a-45, inclusive, including regulations adopted by the commissioner and ordinances and regulations promulgated by municipalities[.]"  Conn. Gen. Stat. § 22a-44.

The Town defendants contend Count Six is not directed at the proper party and should instead be directed at the Greenwich Inland Wetlands and Watercourses Agency.  Def.s' Mem. at 35 n. 10.  The Town defendants argue further that Count Six should be dismissed because the Pelgrifts have failed to state a claim cognizable under

section 22a-44(b) of the General Statutes of Connecticut.  Id. at 34; Def.s' Reply at 5–6. Even if the Pelgrifts are able to state a cognizable claim under the statute, the Town defendants contend that the Town is shielded by discretionary act immunity pursuant to section 52-557n of the General Statutes of Connecticut.  Def.s' Mem. at 35–38.  The Pelgrifts oppose the Town defendants' arguments by asserting that they do state a cognizable claim and by suggesting that the alleged violations at issue were ministerial acts, not discretionary ones, and thus not subject to discretionary act immunity.  Pl.s' Opp'n at 11, 17–18.[7]

### 1.  Proper Party

The court disagrees with the Town defendants that Count Six should be directed against the Greenwich Inland Wetlands and Watercourses Agency and not the Town. As this court has previously explained, "[b]y Connecticut statute, any municipality has the power to sue and be sued."  Watrous v. Town of Preston, 902 F. Supp. 2d 243, 255–56 (D. Conn. 2012) (citing Conn. Gen.Stat. § 7–148(c)(1)(A)). However, "[u]nless municipal departments constitute separate 'bodies politic' under state law, the proper defendant is the municipality, not the municipality's administrative subdivision."  Id. at 256 (citing Levine v. Fairfield Fire Dep't., No. X01 CV890146670S, 1999 WL 241734, *3 (Conn.Super. April 9, 1999) (unpublished)).  The Inland Wetlands and Watercourses Act "does not explicitly declare such inland wetlands agencies to be 'bodies politic' or capable of suing and being sued."  Id.  Accordingly, it is this court's view that the Town, not the Agency, is the proper party.  See id. at 256–57.

---

[7] Liberally construing the Pelgrifts pro se Opposition, the court assumes the Pelgrifts wished to raise this argument as to Count Six, though the heading introducing this argument refers only to Counts Two, Three, and Nine. See Pl.s' Opp'n at 11 ("Discretionary vs. Ministerial Acts, - Counts Two, Three , [sic] and Nine.").

2.    Discretionary Act Immunity

The Town argues that it is entitled to discretionary act immunity because the governing law and regulations promulgated thereunder confer upon its employees and agents considerable discretion when taking the actions at issue.[8]  Def.s' Mem. at 34–38. The Pelgrifts respond that the Town's employees and agents have no such discretion and instead, are required to undertake ministerial functions such that the Town may not invoke discretionary act immunity.  Pl.s' Opp'n at 13–17.

Section 52-557n of the General Statutes of Connecticut provides that a political subdivision of the state may be liable for negligent acts or omissions of its employees acting in an official capacity.  Conn. Gen. Stat. Ann. § 52-557(a)(1).  However, "a political subdivision of the state shall not be liable for damages to person or property caused by . . . negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." Id. at § 52-557n(a)(2)(B).

To determine whether Town employees or agents act with discretion, the court must begin by identifying the specific provisions that Town employees or agents are alleged to have violated.  Count Six of the Amended Complaint does not contain a neat list of all of the statutory provisions of the Inland Wetlands and Watercourses Act, or regulations arising thereunder, that the Town or its employees are alleged to have violated.  See Am. Compl., Count Six.  And the Pelgrifts' Opposition refers only to

---

[8] This sort of immunity is distinct from the qualified immunity doctrine discussed earlier, supra, part B, available under section 1983.  See Dipane-Saleem v. Gallagher, No. 3:15-CV-596 (MPS), 2016 WL 1060190, at *7 (D. Conn. Mar. 15, 2016) ("[While] sometimes called 'qualified immunity[,]' [courts in this District] refer to it as 'discretionary act immunity,' as does the Connecticut Supreme Court, to avoid confusion with the doctrine of qualified immunity under 42 U.S.C. § 1983.)"

general allegations of violations under the Inland Wetlands and Watercourses Act or regulations issued thereunder. Pl.s' Opp'n at 17 (citing Am. Compl. ¶ 229). However, the Count Six of Amended Complaint incorporates by reference the preceding 226 numbered paragraphs, id. at ¶ 227, and the court has undertaken an independent review of these preceding paragraphs to identify the specific statutory and regulatory provisions the Town, or its defendants are alleged to have violated in connection with the Pelgrifts Sixth Cause of Action. The court's review of the Amended Complaint suggests that Town employees are alleged to have violated provisions from sections 7 and 10 of the Greenwich Inland Wetlands and Watercourses Regulations issued pursuant to the Inland Wetlands and Watercourses Act. See Am. ¶¶ 59, 97, 134, 156. The Pelgrifts allege also that Town employees failed to comply with sections 3.2, 4.3.1, and 5.6.2 of the Town of Greenwich Drainage Manual. Id. at ¶¶ 163, 165, 172.

The regulations governing the consideration of an Inland Wetlands and Watercourses permit arise under the Inland Wetland and Watercourses Act, Conn. Gen. Stat. §§ 22a-36 to 22a-45, which directs each municipality within Connecticut to regulate activities affecting wetland and watercourses within its territorial limits. Conn. Gen. Stat. §§ 22a-42, 22a-42a. This Act further provides that municipal agencies, or their agents, "[s]hall consider the factors set forth in section 22a-41" before granting, denying, or limiting a permit. Conn. Gen. Stat. Ann. § 22a-42a(d)(1).

The factors set forth in section 22a-41 include the: (1) "environmental impact of the proposed regulated activity on wetlands or watercourses;" (2) "applicant's purpose for, and any feasible and prudent alternatives to, the proposed regulated activity[;]" (3) "relationship between the short-term and long-term impacts of the proposed regulated

activity on wetlands or watercourses[;]" (4) "[i]rreversible and irretrievable loss of wetland or watercourse resources which would be caused by the proposed regulated activity[;]" (5) "character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened by the proposed regulated activity[;]" and, (6) "impacts of the proposed regulated activity on wetlands or watercourses outside the area for which the activity is proposed[.]"  Conn. Gen. Stat. Ann. § 22a-41.  The Greenwich Inland Wetlands and Watercourses Agency is required to consider the same factors when reviewing a permit application, or when deciding whether to enforce the Agency's regulations.  Greenwich Inland Wetlands and Watercourses Regs., §§ 10.2, 14.1.

That the decisions the Town's employees or agents must make involve weighing various considerations—thus, discretion—is patently clear from a review of the factors that must be contemplated when evaluating a permit application or making an enforcement decision.  See Ventres v. Inland Wetlands & Watercourses Comm'n of Town of Burlington, 25 Conn. App. 572, 574, 595 A.2d 914, 915 (1991) (noting the "broad discretion" conferred upon municipal Inland Wetlands and Watercourses agencies;  Bonington v. Town of Westport, 297 Conn. 297, 308 (2010) ("the plaintiffs claim that checking to see whether required permits and forms have been obtained and filed . . . and enforcing clear violations of zoning regulations are not discretionary acts . . . .  [W]e disagree.").[9]  The court, therefore, concludes that the regulations at issue

---

[9] The Pelgrifts suggest a later case "raises a question as to the continuing authority of Bonington."  Pl.s' Opp'n at 13.  In the case cited by the Pelgrifts, Ventura v. Town of E. Haven, 330 Conn. 613 (2019), the Connecticut Supreme Court referred to Bonington as an example of cases it had previously decided that incorrectly suggested the determination of whether an act is ministerial or discretionary is a question of fact, when it is properly understood as a question of law.  Ventura, 330 Conn. at 636–37.  This conclusion does not otherwise undermine the authority of Bonington.  Indeed, the

permit Town employees to act with discretion when it comes to issuing permits or enforcing regulations at issue.  The court is unpersuaded by the Pelgrifts' arguments to the contrary.  Pl.s' Opp'n at 11–22.  Accordingly, the Town is protected by discretionary act immunity from liability arising from claims asserted in Count Six of the Amended Complaint.

Having concluded the Town may invoke discretionary act immunity, the court does not consider the parties' arguments about the sufficiency, or insufficiency, of the allegations made in Count Six.  The court grants the Town defendants' Motion to dismiss Count Six of the Amended Complaint.

E.    Count Nine: Negligence Per Se

Under Count Nine of the Amended Complaint, the Pelgrifts assert that the Town defendants were negligent per se because they violated the standard of care set by the Connecticut Environmental Protection Act ("CEPA"), the Inland Wetlands and Watercourses Act, and regulations promulgated thereunder.  See Am. Compl., Count Nine.  The Town defendants contend that the claim is not cognizable in light of Connecticut Supreme Court precedent, which purportedly prevents litigants from using CEPA to challenge municipal permitting practices.  Def.s' Mem. at 38–42; Def.s' Reply at 6–7.  The Pelgrifts oppose this argument.  Pl.s' Opp'n at 19–22.

While the court agrees with the Town defendants that Count Nine is not cognizable against them, it does so for a reason other than the one suggested by the Town defendants.  As the court has already explained, supra, part IV.D.2, section 52-

---

Ventura court approvingly explained that Bonington correctly answered the question of an official's discretion as a matter of law.  Id. at 637 n. 12.

557n of the General Statutes of Connecticut insulates the Town defendants from liability for negligent acts when the acts in question are discretionary and the claim seeks damages.[10]  For this reason, Count Nine of the Pelgrifts' Amended Complaint is not cognizable as alleged against the Town defendants.

The court, therefore, grants the Town defendants' Motion to the extent it seeks to dismiss Count Nine as brought against them.

F.    Count Eleven: Violations of the Connecticut Environmental Protection Act

The Pelgrifts bring a claim under section 22a-16 of CEPA and, in so doing, seek declaratory and injunctive relief.  Am. Compl., Count Eleven.  The Town defendants' argue Count Eleven, brought against the Town, Ms. Evans, Mr. Paredes, and other defendants not a party to the instant Motion, should be dismissed because they characterize the Pelgrifts' claims as arising from the Town's failure to properly administer permitting processes, which it argues, is not cognizable under CEPA.  Def.s' Mem. at 38–42; Def.s' Reply at 6–7.  The Pelgrifts oppose this argument.  Pl.s' Opp'n at 18–22.

"[O]ne of the basic purposes of . . . [C]EPA is to give persons standing to bring actions to protect the environment and standing is conferred only to protect the natural resources of the state from pollution or destruction."  Mystic Marinelife Aquarium, Inc. v. Gill, 175 Conn. 483, 499 (1978).  To effectuate this purpose, CEPA provides, "any person . . . may maintain an action . . . for declaratory and equitable relief against the state, [or] any political subdivision thereof . . . for the protection of the public trust in the

---

[10] Section 52-557n applies equally to claims, such as those brought under Count Nine of the Amended Complaint, alleging negligence per se.  See Collins v. Olin Corp., 418 F. Supp. 2d 34, 59–62 (D. Conn. 2006) (granting summary judgment as to claims alleging negligence per se pursuant to discretionary act immunity)

air, water and other natural resources of the state from unreasonable pollution, impairment or destruction[.]"  Conn. Gen. Stat. § 22a-16.  In order to bring a colorable claim under CEPA, it must plausibly allege circumstances that raise an inference "that unreasonable pollution, impairment or destruction of a natural resource will probably result from the challenged activities unless remedial measures are taken."  Fort Trumbull Conservancy, LLC v. City of New London, 282 Conn. 791, 804 (2007).

The Town defendants contend Lewis v. Plan. & Zoning Comm'n of Town of Clinton, 275 Conn. 383 (2005), suggests Count Eleven of the Amended Complaint fails to allege a cognizable claim under CEPA.  Def.s' Mem. at 39.  In Lewis, the court explained CEPA "does not confer standing on a plaintiff who seeks to challenge the validity of [a] permitting process."  275 Conn. at 394.  As a result, the Lewis Court affirmed the dismissal of claims brought under CEPA because the claims were "predicated entirely on [the plaintiff's] assertion of a defect in the permitting process." Id.  In so doing, the Lewis Court observed the plaintiff claimed a stormwater discharge system was unreasonably polluting "because it failed to obtain the necessary permit . . . not [because] . . . construction of the system has or likely will cause unreasonable pollution."  Id.

The Pelgrifts respond that a later case, Windels v. Env't Prot. Comm'n of Town of Darien, 284 Conn. 268, 270 (2007), suggests they have brought a cognizable claim under CEPA.  Pl.s' Opp'n at 21–22.  In Windels, the Connecticut Supreme Court concluded that a trial court erred in dismissing a claim brought under CEPA.  Windels, 284 Conn. at 290.   In reaching this conclusion, the court noted that the Complaint alleged the work of a property developer was likely to cause irreparable harm to the

public trust as a result of storm water run-off.  Id.  The court explained further that, to establish the developer acted unreasonably, the plaintiffs could argue that the developer's work failed to comply with Inland Wetlands and Watercourses regulations. Id. at 293.

Similar to Lewis, the Pelgrifts allege the Town defendants violated CEPA by improperly granting permits.  Count Eleven of the Amended Complaint provides, in part, "[t]here is a legislative and regulatory scheme in place for the protection of the environment administered by [the] Town[.]"  Am. Compl. at ¶ 253.  The Amended Complaint continues: "[t]he instances in which the conduct of the Town of Greenwich through its employees, and Mr. Paredes and Ms. Evans did not comply with that regulatory scheme constitute and created an unreasonable impairment of the natural resources of the state under CEPA."  Id. at ¶ 256.  The Pelgrifts' CEPA claim arises from the Town defendants' failure to properly administer a "regulatory scheme;" these allegations are similar to those raised in Lewis, in which the defendants' failures to properly administer a regulatory scheme also served as the basis of a claim.  275 Conn. at 394.  As the Lewis court explained, CEPA does not provide a cause of action when the basis of the claim is a defendant's failure to properly administer a regulatory scheme.

The Pelgrifts' allegations contrast with those raised in Windels, in which the alleged introduction of stormwater into areas protected by CEPA in contravention of a regulatory scheme served as the basis of the claim.  284 Conn. at 290–93.  Here, unlike in Windels, the Pelgrifts do not allege that the Town, itself, or the Town defendants,

themselves, improperly deposited water into areas protected by CEPA.  <u>See</u> Am. Compl., Count Eleven.

Accordingly, the court grants the Town defendants' Motion to dismiss Count Eleven of the Amended Complaint.

### G.    Count Twelve: Indemnification

The Pelgrifts seek indemnification from the Town pursuant to section 7-465 of the General Statutes of Connecticut on the basis of damages allegedly attributable to the individual Town defendants under Counts Two, Nine, and Eleven of the Amended Complaint.  Am. Compl. at ¶ 261.  The Town defendants argue, in the event the court dismisses Counts Two, Nine, and Eleven, Count Twelve should also be dismissed.  Def.s' Mem. at 42.  The Pelgrifts do not respond to this argument in their Opposition. <u>See</u> Pl.s' Opp'n.

The court agrees with the Town defendants that Count Twelve is derivative of claims asserted against the individual Town defendants. <u>See</u> <u>Ravalese v. Town of E. Hartford</u>, No. 3:16-CV-1642 (VAB), 2019 WL 2491657, at *18 (D. Conn. June 14, 2019). However, the court has denied the Town defendants' Motion to Dismiss Count Two; accordingly, it also denies the Motion to Dismiss Count Twelve as it would relate to Count Two of the Amended Complaint.

## V.    CONCLUSION

For the reasons stated above, the court grants in part and denies in part the Town defendants' Motion to Dismiss (Doc. No. 77).  The Motion is granted as to Counts Six, Nine, and Eleven.  The Motion is also granted as to Count One to the extent Count One of the Amended Complaint is based on the Town's issuance of permits.  Counts Two and Three of the Amended Complaint survive the instant Motion to the extent the

27

plaintiffs' claims are based on the Town defendants' alleged infringement of the plaintiffs' alleged right to use their property free from flooding. The Motion is otherwise denied.

The plaintiffs are granted leave to file a Second Amended Complaint if they replead consistent with this Ruling, the Federal Rules of Civil Procedure, and this court's Ruling on the plaintiffs' Motion to File an Amended Complaint (Doc. No. 114). If the plaintiffs choose to replead, they may do so as to Counts Six and Nine of the Amended Complaint. The plaintiffs may not replead the other causes of action, or basis thereof, dismissed in this Ruling because the remaining infirmities of the Amended Complaint are issues of law, which cannot be cured by repleading.

If the plaintiffs replead, the court will allow the plaintiffs to include additional causes of action against any party to this suit, and the plaintiffs may add additional allegations to the now remaining causes of action except for Count One, to the extent this cause of action is based on the Town's issuance of permits, Count Six, Count Nine, and Count Eleven of the Amended Complaint.

In repleading, the plaintiffs may not attach exhibits, which are unnecessary at this stage of this litigation, and must avoid prolixity. This allowance to replead is the last and final such allowance that will be made by this court. The plaintiffs are warned that if the Second Amended Complaint is excessively long, laden with unnecessary evidentiary allegations, or otherwise in violation of the Federal Rules of Civil Procedure, the court will dismiss the Second Amended Complaint and will proceed to the resolution of this case on the basis of the Amended Complaint as it now exists as of this immediate Ruling.

The court wishes to inform the pro se plaintiffs of the Federal Pro Se Legal Assistance Program at the Quinnipiac University School of Law.  The program provides free, limited scope legal assistance to certain pro se litigants.  Pro se litigants may apply for assistance by calling (203) 850-7720 or by emailing federalproselegal@qu.edu.

Should the plaintiffs' replead, the Second Amended Complaint must be filed no later than twenty-one (21) days from the date this Ruling is entered on the docket.  All parties to this matter should understand that, absent extraordinary circumstances, the court will deny any motion seeking an extension of time to replead or to file a response thereto.

**SO ORDERED.**

Dated at New Haven, Connecticut this 29th day of May 2025.

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge